# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3396

_____

| | | |
|---|---|---|
| Michael Sherman, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Marvin T. Runyon, Jr., in his official | * | |
| capacity as Postmaster General of the | * | |
| United States Postal Service, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: October 19, 2000

Filed: December 19, 2000

_____

Before HANSEN, MURPHY, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Plaintiff Michael Sherman, who is deaf and mute, appeals from the district court's[1] judgment in favor of defendant Marvin Runyon, the Postmaster General, on plaintiff Sherman's Rehabilitation Act claims. After a bench trial, the district court found that Sherman had failed to show that the United States Postal Service (USPS)

_____

[1]The Honorable Judge Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

had fired him because of his disability or in retaliation for his prior discrimination claims. Instead, the court accepted the USPS' stated reason, Sherman's display of violence in the workplace. We affirm the decision of the district court.

I

Sherman has been deaf since birth. Although he cannot talk, he does vocalize. His primary language is American Sign Language (ASL). Prior to November 19, 1995, he had worked for the USPS at its main facility in Minneapolis for 15 years.

The USPS has adopted a zero tolerance policy toward workplace violence. In July 1995, Sherman's supervisor, Daniel Gergen, gave a talk on the subject to his section, which was translated into ASL for the benefit of the hearing impaired. Additionally, multi-page notices on the subject were posted at the facility.

In August 1995, Sherman began filing a series of informal complaints, called "hazard reports," against his co-workers for smoking in non-smoking areas. Additionally, in October 1995, he filed an informal complaint against Gergen with the USPS' Equal Employment Opportunity (EEO) office, alleging a violation of his privacy rights. Later, on November 17, he followed up with a formal EEO complaint alleging disability discrimination by Gergen.

On the night of November 19, 1995, Sherman was working overtime at his job as a mail sorter when Gergen informed him that he was not sorting a sufficient volume of mail. Sherman became angry and began vocalizing and gesturing at Gergen. Gergen then ordered him to leave work and go home. Sherman again vocalized, made gestures, and kicked a trash can. Sherman claims that his gestures were ASL signs for "why," and for "automobile" (indicating that he did not have a car and could not drive himself home). Gergen, who knows a limited amount of ASL, did not recognize his gestures

as signs, but instead perceived Sherman's gestures as threats.[2]  Sherman was put in a taxi and sent home.  His supervisors placed him on emergency suspension the next day.  After an informal hearing, Sherman was issued a notice of discharge on December 12, 1995.

Sherman filed suit, alleging discrimination and retaliatory discharge under portions of the Rehabilitation Act, 29 U.S.C. §§ 791(b) and § 794(a).  The district court denied the USPS' motion for summary judgment.  After a bench trial, the district court held that the USPS had a legitimate, non-pretextual reason for discharging him, and he was not similarly situated to two other employees who were not discharged after displaying violence or threatening other employees.  In addition, the court found that Sherman had not shown a link between "protected activity" and his termination, that would allow a finding of retaliatory discharge.  Sherman appeals this decision.

II

We review the factual findings of the district court for clear error.  See Griffin v. City of Omaha, 785 F.2d 620, 625 (8th Cir. 1986).  "We may not reverse the district court's findings that the appellant[] [was] not subject to impermissible discrimination unless our review of the record leaves us with the 'definite and firm conviction that a mistake has been made.'"  Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)).

Sherman lacks direct evidence of discrimination or retaliation.  To prevail, then, he must demonstrate circumstantial evidence of discrimination or retaliation via the three-part burden-shifting scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973).  See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134-35 (8th Cir. 1999)

---

[2]Gergen, who was quite shaken by the ordeal, received counseling to deal with his continued perception of being threatened with violence.

(discriminatory discharge under the Americans with Disabilities Act), cert. denied, 120 S. Ct. 59 (1999); Wentz v. Maryland Casualty Co., 869 F.2d 1153, 1154-55 (8th Cir. 1989) (retaliation under the Age Discrimination in Employment Act).

On appeal after trial, we are less concerned with the intricacies of the McDonnell Douglas scheme, and more concerned with whether sufficient evidence supports the judgment of the district court. "Once a finding of discrimination has been made and that judgment is being considered on appeal, the McDonnell Douglas presumptions fade away, and the appellate court should simply study the record with a view to determining whether the evidence is sufficient to support whatever finding was made at trial." Morgan v. Arkansas Gazette, 897 F.2d 945, 948 (8th Cir. 1990) (internal quotations and citations omitted).

Bearing this standard in mind, we must evaluate whether the district court properly determined that the USPS neither discriminated nor retaliated against Sherman.

III

We find that the district court did not clearly err in finding that USPS did not intentionally discriminate against Sherman. "Both actual violence and threats of violence are legitimate reasons for terminating an employee." Clark v. Runyon, 218 F.3d 915, 919 (8th Cir. 2000). It is especially noteworthy that both Clark's and Sherman's actions violated a zero tolerance policy toward violence in the workplace. See id.

Sherman alleges that the USPS has used his November 19 outburst as a pretext for firing him. As evidence of pretext, he points to two other employees who were not discharged for their violent outbursts. "Instances of disparate treatment can support a claim of pretext, but [plaintiff] has the burden of proving that he and the disparately

treated [employees] were similarly situated in all relevant respects." Lynn v. Deaconess Medical Ctr. – West Campus, 160 F.3d 484, 487 (8th Cir. 1998) (citation omitted). In this case, neither employee worked in the main postal facility in Minneapolis, and neither employee was disciplined by the same supervisors as Sherman. "[I]t is difficult to say that the difference [in disciplinary decisions] was more likely than not the result of intentional discrimination when two different decision-makers are involved." Jones v. Frank, 973 F.2d 673, 676 (8th Cir. 1992) (citation omitted); see also Clark, 218 F.3d at 918. Having reviewed the record, we conclude that the district court properly found that the USPS' actions were not pretextual.

IV

Likewise, the district court did not clearly err in rejecting Sherman's retaliation claim. Sherman alleges that his discharge was in retaliation for his filing of "hazard reports" and for his filing of both informal and formal EEO charges against Gergen.

To prevail on a claim for retaliation, Sherman must prove that he was engaged in a "protected activity" under the Rehabilitation Act. See Moore v. City of Overland Park, 950 F. Supp. 1081, 1085 (D. Kan. 1996). Courts have found that an informal or a formal complaint about, or other opposition to, an employer's practice or act may be protected if the employee reasonably believes such an act to be a violation of the statute in question. See Wentz, 869 F.2d at 1155 (retaliation claim under the ADEA); Evans v. Kansas City, MO. Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1995) (retaliation as defined by Title VII). Thus, to be engaged in a protected activity under the Rehabilitation Act, Sherman must have been protesting what he perceived as discriminatory acts by Gergen or other supervisors. The district court correctly asserted that Sherman's filing of "hazard reports" is not protected, since these hazard reports complain almost exclusively of his co-workers' smoking in non-smoking areas.

The filing of the formal EEO complaint is protected, since Sherman clearly labeled the ground for his complaint as disability discrimination. But the district court found that there was not a sufficient connection between the filing of the EEO complaint and Sherman's discharge to show retaliation. This finding is not clearly erroneous.

Sherman contends that the timing of his suspension, two days after he filed the formal EEO complaint against Gergen, shows that the suspension and ultimate discharge were in retaliation for his filing of the EEO charge. The timing of a plaintiff's discharge in relation to his protected activity can sometimes establish causation for the purpose of establishing a prima facie case. See Smith v. Riceland Foods, Inc., 151 F.3d 813, 820 n.5 (8th Cir. 1998). However, timing on its own is usually not sufficient to show that an employer's non-discriminatory reason for discharge is merely pretext. See Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 272 (8th Cir. 1996). Instead, the timing of the discharge is usually evaluated in light of other evidence, or lack of other evidence, in the record. See Nelson v. J.C. Penney Co., Inc., 75 F.3d 343, 346 (8th Cir. 1996) ("In light of all of these circumstances, we cannot agree with the trial court that the mere coincidence of timing established a submissible case of retaliatory discharge.") The timing of the two incidents is insufficient, in light of the events of November 19 and the USPS' zero tolerance policy, to show retaliatory intent. The district court's finding that the USPS did not retaliate against Sherman is not clearly erroneous.

V

For the above reasons, the decision of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.