# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1490

_____

| | | |
|---|---|---|
| Roger Jeseritz, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| John E. Potter,[1] in his official | * | District of Minnesota |
| capacity as Postmaster General of the | * | |
| United States, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 19, 2001

Filed: March 4, 2002

_____

Before McMILLIAN, BEAM, and MURPHY, Circuit Judges.

_____


McMILLIAN, Circuit Judge.

_____

[1]John E. Potter took over the official capacity of Postmaster General of the United States on June 1, 2001, and has been substituted in the caption for William J. Henderson, Postmaster General when the case was filed.

Roger Jeseritz appeals from a final judgment entered in the district court[2] granting summary judgment favor of the United States Postal Service (USPS) on his employment discrimination claims under the Rehabilitation Act, 29 U.S.C. § 794. For reversal, Jeseritz argues the district court erred in holding that he failed to produce sufficient evidence to support his discharge and harassment claims and that he failed to exhaust administrative remedies as to his accommodation and retaliation claims. We affirm.

## BACKGROUND

Jeseritz began working as a distribution clerk for the USPS in 1985 at the Willmar, Minnesota, post office. The job required use of his hands and wrists, but accommodated his hearing impairment. In 1989, Jeseritz took several days off for pain and numbness in his right wrist and filed a claim for lost wages with the Office of Workers' Compensation Programs (OWCP). The OWCP accepted the claim due to work-related tendinitis of the right wrist. In May 1990, Jeseritz reported problems with both wrists and saw Dr. Thomas Jetzer. After consultation with the doctor, the USPS placed Jeseritz on a limited duty assignment with restrictions on hand-sorting tasks. In October 1992, Jeseritz complained of increased problems and saw Dr. Dennis Peterson, who recommended a ninety-day leave. The USPS granted the leave and during that time consulted with Jeseritz, his doctors, and the OWCP to develop further work restrictions. In 1993, Jeseritz accepted a job offer with further restrictions, but continued to complain of problems. In January 1994 he applied to the OWCP for a workers' compensation award and took a leave from September 1994 until June 1995.

---

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

In December 1994, the OWCP granted Jeseritz's claim, finding that he had 56% permanent partial disability of his right arm and 53% permanent partial disability of his left arm. Jeseritz received a lump sum payment of $49,430 and was to receive monthly checks of $2317 until August 1999. In May 1995, Drs. Jetzer and Peterson met with postal officials to develop job duties to accommodate Jeseritz's impairments. Based on the doctors' recommendations, the USPS offered Jeseritz a new job. He accepted the offer and returned to work.

In early 1996, after the USPS received information that Jeseritz was involved in off-duty physical activities that conflicted with his job restrictions, it began an investigation. Among other things, in the summer of 1996 investigators videotaped Jeseritz pitching and batting in numerous softball games and operating a sod-cutting machine on a softball field. Pursuant to the USPS's request, Dr. Jetzer viewed an edited videotape. In a September 1996 letter, Dr. Jetzer, who was a team physician for a professional baseball team, questioned the validity of Jeseritz's past complaints, noting his softball activities were beyond his claimed work capabilities. The doctor was especially troubled that Jeseritz had been operating "a very high force vibrating tool that cuts sod," noting that vibrating tools significantly aggravate wrist problems. Dr. Peterson also viewed the videotape and found it "disconcerting" that Jeseritz was engaging in activities that were inconsistent with his work restrictions. During a November 1996 interview, Jeseritz told inspectors that he played softball only occasionally and with his doctors' approval. However, when told of the investigation and the videotape, Jeseritz admitted that he had played about twenty softball games in the summer of 1996 and did not respond when informed that Dr. Peterson was unaware that he was playing softball.

In April 1997, the USPS issued a notice of proposed removal based on misconduct. The notice stated that Jeseritz had misrepresented his medical condition and failed to maintain work restrictions outside the job, in violation of the USPS rules of conduct. The notice explained that engaging in activities outside medical

restrictions could "aggravate [his] condition and unnecessarily increase the cost of [his] disability," noting that Jeseritz had received over $99,800 in workers' compensation payments and was scheduled to continue to receive monthly payments until August 1999.[3]  Appellee App. at 83.  Jeseritz opposed the notice of proposed removal, but  the USPS found his explanations unpersuasive and in May 1997 terminated him.

Jeseritz then filed a union grievance, alleging there was no contractual just cause for the removal. In January 1999, an arbitrator found that while Jeseritz had not intentionally misrepresented his condition, because he had engaged in off-duty activities that were beyond his medical restrictions, the USPS had just cause for discipline.  However, the arbitrator found that removal was too harsh a penalty and ordered that Jeseritz be reinstated after a sixty-day suspension without pay.  Jeseritz returned to the post office, where he is apparently still employed.

Jeseritz also filed an Equal Employment Opportunity (EEO) complaint, alleging a discriminatory discharge and harassment. The claim was denied and Jeseritz appealed to the Merit Systems Protection Board (MSPB), which upheld the denial. Jeseritz then filed the instant complaint in the district court, alleging harassment, accommodation, discharge, and retaliation claims under the Rehabilitation Act.  The district court rejected the claims.  As to the discharge claim, the court held that the USPS had a non-discriminatory reason for the notice of removal and that Jeseritz had offered no evidence to suggest that the reason was pretextual or that disability played any role in the decision.  As to the harassment claim, the district court held that alleged incidents were not so severe or pervasive as to create a hostile work environment.  As

---

[3]In 2000, the OWCP found that based on additional medical evidence Jeseritz's impairment was no greater than 20% in his right arm and 10% in his left arm, and reduced his scheduled award accordingly.

to the accommodation and retaliation claims, the district court held that Jeseritz offered no evidence in support of the claims.   This appeal followed.

Jurisdiction in the district court was proper under 28 U.S.C. § 1331. Jurisdiction in this court is proper under 28 U.S.C. § 1291.

**DISCUSSION**

We review the district court's grant of summary judgment de novo.  After viewing the evidence and all reasonable inferences therefrom in the light most favorable to Jeseritz, we will affirm only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In order to establish a genuine issue of material fact, Jeseritz, as the non-moving party, could not "simply rest upon the pleadings."  Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1164 (8th Cir. 1998) (Mathews).  Nor could he rely on conclusory statements in his affidavit.  See Miller v. Citizens Sec. Group, Inc., 116 F.3d 343, 347 (8th Cir.1997) (Miller).  Rather, he had to "point to evidence in the record sufficient to raise a genuine issue for trial." Mathews, 143 F.3d at 1164.

As relevant here, the Rehabilitation Act, 29 U.S.C. § 794(a), provides that"[n]o otherwise qualified individual with a disability . . . shall solely by reason of her or his disability . . . be subjected to discrimination under any program or activity conducted by . . . the [USPS]." (Emphasis added.)  As to his discharge claim, Jeseritz had to offer evidence that he was disabled, otherwise qualified, and was discharged solely because of his disability.  See Demming v. Housing & Redev. Auth., 66 F.3d 950, 954 (8th Cir. 1995).  The USPS does not dispute that Jeseritz is disabled, but argues that he is not otherwise qualified.  For purposes of this opinion, we will assume that he is both disabled and otherwise qualified.

We now turn to Jeseritz's argument that he presented evidence to show that the USPS's reasons for the discharge were a pretext for discrimination. See Sherman v. Runyon, 235 F.3d 406, 409 (8th Cir. 2000) (Sherman) (holding burden-shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1993) applicable to Rehabilitation Act discrimination claims). In his appellate brief, Jeseritz does not dispute that, as the arbitrator found, the USPS had a right to discipline him based on his off-duty outside activities.[4] As the USPS argues, although Jeseritz may have "believe[d] that his termination was a sanction disproportionate to the conduct that precipitated it, the degree of discipline was a matter committed to [the USPS's] discretion." Roberts v. Unidynamics Corp., 126 F.3d 1088, 1094 (8th Cir. 1997), cert. denied, 523 U.S. 1106 (1998) (Roberts); see also Winkle v. Southwestern Bell Tel. Co., 195 F.3d 418, 420 n.3 (8th Cir. 1999) (holding plaintiff who did not contest misconduct given as reason for termination decision could not show pretext).

Contrary to Jeseritz's argument, this court is not bound by the arbitrator's finding that removal was too harsh a penalty for his misconduct. In rejecting a similar argument, this court has explained, "[i]n an arbitration under the 'just cause' provision, . . . the employer needs to show not only that it had a nondiscriminatory reason, but also that it was a good reason, not reached in bad faith." Taylor v. Southwestern Bell Tel. Co., 251 F.3d 735, 743 n.1 (8th Cir. 2001). Moreover, "an arbitrator's inquiry could extend beyond that of a court or jury in a discrimination action, to include such a question as whether the employee's punishment was disproportionate." Id. Thus, Jeseritz's reliance on labor relations cases is misplaced.

_____

[4]At oral argument, Jeseritz suggested that he had not conceded that the USPS had a right to discipline him based on his softball and sod-cutting activities. However, throughout his brief, he makes such a concession. For example, he asserts that "[t]he sort of discipline enforced for misconduct of the kind that Mr. Jeseritz really committed was far milder than discharge." Brief for Appellant at 11.

In contrast, here, so long as the USPS's removal decision "was not motivated [solely] by an unlawful consideration, it is beyond our power to review it." Roberts, 126 F.3d at 1094. Jeseritz concedes the USPS "has the right to investigate its employees to expose suspected misconduct." Brief for Appellant at 27. However, he argues that his evidence raised an inference that the USPS "set him up" to get rid of him because "it was so difficult to accommodate his disability." Id. at 22. We disagree. Jeseritz offers nothing more than unsubstantiated allegations. See Roberts, 126 F.3d at 1093 (holding other than speculation, plaintiff offered no evidence of having been "set-up"). Jeseritz offers no evidence to support his allegation that the USPS showed the videotape to "various physicians in a very selective and threatening manner trying to force them to change their opinions." Brief for Appellant at 23. Nor is there any evidence to support his allegation that the USPS "submitted false affidavits in an attempt to bolster its case." Id. at 25. Contrary to Jeseritz's suggestions, the USPS did not have an obligation to bring his admittedly "problematic activities" to his attention at the first opportunity or to "prevent" him from playing softball. Id. at 12. Indeed, when the USPS questioned Jeseritz about his softball activities, he denied the extent of the activities until he saw the videotape. Jeseritz also argues that he demonstrated pretext because other employees were not terminated for misconduct, but his argument fails. Jeseritz has failed to identify any similarly situated employee. See Sherman, 235 F.3d at 409; Roberts, 126 F.3d at 1094. His "own conclusory allegations that the [USPS was] out to get" him because of his disability "will not suffice." Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 570 (8th Cir. 2000).

The district court also did not err in granting summary judgment to the USPS on the hostile work environment claim. As the USPS notes, this court has "never recognized an ADA [or Rehabilitation Act] claim based on a hostile work environment." Wallin v. Minnesota Dep't of Corrs., 153 F.3d 681, 687 (8th Cir. 1998). For purposes of analysis, we will assume one exists and "would be modeled after the similar claim under Title VII." Id. at 688 (internal quotation omitted). Thus, Jeseritz

had to offer evidence of harassment that was "'so severe or pervasive as to alter the conditions of [his] employment and create an abusive working environment.'" Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998)). Initially, the district court noted that although Jeseritz had alleged numerous incidents of harassment, he offered no record support for many of them. Although the district court gave Jeseritz additional time to supply citations to the record, he failed to do so, and the district court properly refused to search the record for support. See Miller, 116 F.3d at 346 n.4.

The district court did address Jeseritz's allegations concerning (1) a printed poster about fraudulent workers' compensation claims on which his name had been hand-written; (2) the investigation into his misconduct; and (3) certain adverse comments. As the USPS argues, the evidence, individually and taken together, did not demonstrate a hostile work environment. Even if the poster remained on the wall for two weeks after Jeseritz complained about it, the incident was isolated. In addition, although Jeseritz may have been "upset and embarrassed by the posting of the derogatory flier, [he] failed to show that the posting affected a term, condition, or privilege of [his] employment." Austin v. Minnesota Mining & Mfg. Co., 193 F.3d 992, 994 (8ᵗʰ Cir. 1999). There is no evidence to support Jeseritz's allegations that the investigation was conducted in a threatening or abusive manner. Indeed, as the USPS points out, Jeseritz was apparently unaware of the investigation until the November 1996 interview.

We also agree with the USPS that the alleged adverse comments were either isolated, innocuous, remote in time, or made by persons unconnected to the discipline. For example, Jeseritz notes a supervisor commented that he could get in trouble for filing a false workers' compensation claim, but admits that the comment was true. Jeseritz also notes that in 1996 a postmaster at another post office had commented about his "bad wrists and ears" and asked "what's next?" However, Jeseritz admitted that at the time the postmaster was not in his chain of command and had nothing to do

with the removal. Although Jeseritz alleged that from 1990 to 1997 co-workers made comments, such as calling him a "cripple," he thought he may have mentioned the comments once or twice to a supervisor. However, he could not specifically recall reporting the comments, noting that his co-workers never "pressed it or . . . got real." Appellee's App. at 778.

We now turn to the accommodation and retaliation claims. On appeal Jeseritz argues that the district court erred in holding that he had failed to exhaust his administrative remedies. Although the USPS raised an exhaustion issue, the district court did not address it. Instead, it held that Jeseritz had failed to establish a prima facie case on either claim. As to the accommodation claim, the court held that the evidence showed that the USPS accommodated Jeseritz's impairments. Jeseritz does not challenge this holding on appeal and thus has waived review of the accommodation issue. See United States v. Brooks, 175 F.3d 605, 606-07 (8th Cir.), cert. denied, 528 U.S. 958 (1999).

As to the retaliation claim, the district court held that Jeseritz had failed to offer evidence that he engaged in a statutorily protected activity, an essential element of the claim. See Sherman, 235 F.3d at 409. Protected activity is "an informal or formal complaint about, or other opposition to, an employer's practice or act . . . if the employee reasonably believes such an act to be in violation of the statute in question." Id. Although filing an EEO complaint can be a protected activity, Jeseritz did not rely on his EEO complaint as the relevant protected activity. Rather, he argued that he "engaged in protected activity by regularly submitting claims that he was not being accommodated, that he was being harassed, that his medical complaints were being stalled and ignored." On appeal, he argues that "[t]he merits of the retaliation claim are clear." Brief for Appellant at 29. However, he does not cite relevant case law or record evidence in support of his argument, as is required by Fed. R. App. P. 28(a)(9)(A). Thus, we do not review the district court's holding. See United States v. Echols, 144 F.3d 584, 585 n.2 (8th Cir. 1998) ("Because no argument or authority

has been forthcoming, we hold that these issues are waived.").  In any event, even if Jeseritz had established a prima facie case, as in his discrimination claim, he failed to offer any evidence that the USPS's reasons for removal were a "pretext for retaliation." Buettner v. Arch Coal Sales Co., 216 F.3d 707, 714 (8th Cir. 2000), cert. denied, 531 U.S. 1077 (2001)).

Accordingly, we affirm the judgment of the district court.

A true copy:

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.