# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 04-2486

Barbara Logan,               *
                                       *

          Appellant,        *

     v.                      * Appeal from the United States
                                       * District Court for the Eastern District

Liberty Healthcare Corporation, d/b/a   * of Arkansas.
Arkansas Partnership Program,        *
                                         *

          Appellee.         *

Submitted: February 15, 2005
Filed: July 26, 2005

Before McMILLIAN, WOLLMAN, and BENTON, Circuit Judges.

McMILLIAN, Circuit Judge.

Barbara Logan appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of her former employer, Liberty Healthcare Corporation, d/b/a Arkansas Partnership Program (APP), in her action alleging gender, age and disability discrimination, retaliation, and other federal and state claims. On appeal, Logan only challenges the district court's grant of summary judgment on her retaliation claim. For the reasons set forth below, we affirm.

---

[1] The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

## BACKGROUND

Logan began working for APP, which is a residential mental health and drug abuse treatment facility, in 1997 as a security guard. Among other things, security guards search visitors to the facility for contraband and sometimes intervene if a patient becomes violent. In February 2002, Dr. Ronald Smith, APP's executive director, Dr. Kathleen Casey, APP's clinical director, and Linda Bivens, APP's business manager, promoted Logan to the position of security supervisor. Soon after her promotion, problems arose between Logan and Don Dickson, a security guard who also had applied for the supervisor position. About four months after her promotion, Logan sensed tension between herself and Dr. Casey, but did not know why. On September 6, 2002, Logan overheard Dickson comment that Dr. Casey, who was Logan's supervisor, had touched him and that unless Dr. Casey stopped touching him, he would report her. Although Dickson had not requested Logan to report his complaint, that day Logan wrote a memo to Dr. Smith about Dickson's comment. Three days later Dr. Casey talked to Logan and Dickson. Dickson described Dr. Casey's touching as scratching or patting of his back and stated that although he did not welcome the touching, he did not consider it sexual harassment.

On September 11, 2002, Dr. Casey told Logan because of the animosity between her and Dickson, Dr. Smith was requesting her resignation as security supervisor. Logan resigned the position as security supervisor and returned to work as a security guard. According to Logan, pursuant to Dr. Casey's suggestion, in her letter of resignation, Logan, who had been treated for breast cancer, multiple sclerosis and depression, stated she was resigning as security supervisor because of health concerns. Dickson was subsequently appointed as security supervisor.

APP offered its employees "Paid Time Off" (PTO), which could be taken for any reason, as long as it was approved. Logan received PTO approval for a November 20, 2002, dental appointment, which was related to a worker's

2

compensation injury. Although Logan cancelled the appointment, she did not report to work. On Friday, December 5, 2002, during the evening shift, Logan requested time off for a dental appointment on Tuesday, December 9, 2002. Because Logan knew that Dr. Casey had left for the day and was not scheduled to work until Monday, Logan put the PTO request under Dr. Casey's door. Dr. Casey came in over the weekend, and by memo of December 7, 2002, approved the request, but cautioned Logan that PTO requests should be submitted as far in advance as possible. In the memo, Dr. Casey explained that "[s]ubmitting a request that gives management only one working day to [staff a security guard shift] . . . is not acceptable, and in the future a [PTO] request will be denied unless an emergency is involved." Logan responded by writing at the bottom of the memo, "This was a necessary appointment. It was not scheduled way in advance, they worked me in. I always give APP as much notice as I get. I resent you insinuating otherwise."

Hannah Ruggiero, an employee of APP's parent company who handled worker's compensation matters, called Logan's dentist and discovered that Logan had canceled the November 20 appointment the day of the appointment, claiming that she had to work overtime, and on that day had rescheduled the appointment for December 9. Ruggiero informed Dr. Casey of the conversation.

By letter dated December 10, 2002, Dr. Casey notified Logan that pursuant to company policy, she was being terminated because she had been dishonest by claiming that the December 9 dentist appointment had not been scheduled in advance and had been dishonest in cancelling the November 20 appointment by claiming that she had to work overtime. APP's employee manual provided for immediate dismissal for dishonesty, which included "lying about sick . . . leave."

In May 2003, Logan filed a complaint against APP, alleging gender discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et. seq., age discrimination under the Age Discrimination in Employment

Act, 29 U.S.C. § 621 et seq., disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., and other violations of federal and state law.

APP moved for summary judgment on all the claims. As to the discrimination and retaliation claims, APP argued that Logan could not present prima facie cases, and in any event, summary judgment was appropriate because Logan could not prove that its reason for her demotion–animosity between her and Dickson–and reason for discharge–dishonesty–were pretexts for discrimination or retaliation. In opposing the motion, Logan argued that she presented evidence which established prima facie cases of discrimination and retaliation and presented evidence showing that APP's proffered reasons were pretextual. As to her retaliation claims, Logan argued that she had proved prima facie cases because Dr. Casey had demoted and then discharged her shortly after she had reported Dickson's complaint about Dr. Casey, noting proximity in time between a protected activity and an adverse employment action can sometimes serve as evidence of pretext in retaliation claims. Logan also alleged that APP's reasons were pretextual because other employees had not been terminated for violating the PTO policy, that APP had closely scrutinized her conduct and APP had failed to follow its progressive disciplinary policy. In reply, APP noted that although Logan had asserted that its reasons for her demotion and discharge were pretextual, she failed to present evidence in support.

In March 2004, the district court granted APP's summary judgment motion. The district court held that Logan had not presented evidence that APP's reasons for Logan's demotion and discharge were pretextual. As to her retaliatory demotion claim, the district court noted that Logan had admitted that there was tension between her and Dickson. As to her retaliatory discharge claim, the district court noted that Logan had admitted that although she had cancelled the November 20 dental appointment, she did not report to work, and also had admitted that she must have scheduled the December 9 appointment in advance of December 5.

**DISCUSSION**

We review the district court's grant of summary judgment de novo. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) (Smith). "We must affirm if, viewing the record in the light most favorable to [Logan], there are no genuine issues of material fact and [APP] is entitled to judgment as a matter of law." Id.

On appeal Logan only challenges the district court's grant of summary judgment on her retaliation claims. As Logan notes, the McDonnell Douglas[2] burden-shifting analysis "governs the order and allocation of proof for retaliation claims." Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1048 (8th Cir. 2005). Under this analysis, a plaintiff must first establish a prima facie case by showing that he or she: "(1) engaged in statutorily protected activity; (2) he [or she] suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." EEOC v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003). If the prima facie case is met, the burden shifts to the defendant to produce "a legitimate, non-retaliatory reason for the action it took against the plaintiff." Id. If the defendant satisfies its burden, the plaintiff is "then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation." Smith, 302 F.3d at 833.

Logan first argues that the district court erred in analyzing her prima facie cases of retaliation by conflating the third element of the cases–causation–with her burden to prove that APP's reasons for the demotion and discharge were pretexts for retaliation. Logan correctly notes that "the threshold of proof necessary to establish a prima facie case is minimal." Young v. Warner-Jenkins Co., 152 F.3d 1018, 1022

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

5

(8th Cir. 1998). She is also correct that "the timing of [an adverse action] in relation to . . . protected activity can sometimes establish causation for purpose of establishing a prima facie case." Sherman v. Runyon, 235 F.3d 406, 410 (8th Cir. 2000) (Sherman). However, we need not address Logan's arguments concerning her prima facie cases. Logan concedes that APP produced legitimate, non-retaliatory reasons for her demotion and discharge. She also concedes that because the "district court did rule on the issue of pretext for retaliation," this court need not "return to the first stage of McDonnell-Douglas." Appellant Br. at 20 n.7. Thus, we will assume that Logan has established prima facie cases of retaliatory demotion and discharge and turn to the issue of pretext.[3]

As Logan notes, this court has stated "[i]t is possible for strong evidence of a prima facie case to establish pretext as well." Smith, 302 F.3d at 834. As to the causation element of her prima facie demotion case, which was the disputed element in the district court, Logan's evidence is not strong. We agree with Logan that the close proximity in time between her report of alleged sexual harassment and her demotion is enough to establish the causation element of her prima facie case. See id. at 833 ("These two events are extremely close in time and we conclude under our precedent this is sufficient, but barely so, to establish causation, completing [plaintiff"s] prima facie case."). However, in this case, as in most cases, "timing on its own is . . . not sufficient to show that an employer's non-discriminatory [or non-retaliatory] reason for [an adverse employment action] is merely pretext." Sherman, 235 F.3d at 410; see also Kipp v. Missouri Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) ("[g]enerally, more than a temporal connection . . . is required

---

[3]For purposes of this opinion, we assume, but do not decide, that by reporting Dickson's comment to Dr. Smith, Logan engaged in statutorily protected activity. However, we note that this court has stated that "plaintiffs who reasonably believe that conduct violates Title VII should be protected from retaliation even if a court ultimately concludes that plaintiff was mistaken in her belief." Peterson v. Scott County, 406 F.3d 515, 525 n.3 (8th Cir. 2005).

to present a genuine factual issue on retaliation") (internal quotation omitted). This is so because in deciding whether a plaintiff has presented sufficient evidence to demonstrate pretext or retaliation, we evaluate the timing of an adverse action "in light of other evidence, or lack of other evidence, in the record." Sherman, 235 F.3d at 410. Put another way, "'[a]n employee's attempt to prove pretext . . . requires more substantial evidence [than it takes to make a prima facie case], . . . because unlike evidence establishing a prima facie case, evidence of pretext . . . [and retaliation] is viewed in light of the employer's justification.'" Smith, 302 F.3d at 834 (quoting Sprenger v. Federal Home Loan Bank, 253 F.3d 1106, 113-14 (8th Cir. 2001)).

We agree with APP that Logan failed to present sufficient evidence from which a reasonable jury could conclude that APP's reason for her demotion was a pretext for retaliation. "One method of proving pretext is to show that the employer's proffered explanation has no basis in fact." Id. This Logan cannot do. As the district court noted, Logan admitted that there was tension between her and Dickson and that Dr. Casey had told her that Dr. Smith had requested her resignation. Indeed, at her deposition when asked, "Is there any reason why [Dr. Smith] would want you to resign, other than the animosity between you and Don Dickson," Logan responded, "No." In addition, APP presented evidence that Dr. Smith was considering asking for Logan's resignation six weeks before she reported Dickson's comment and Logan admitted that months before her report to Dr. Smith, her relationship with Dr. Casey had become "tense." We have noted that "[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." Id.

Regarding the admitted tension with Dickson, Logan asserts that because Dickson wanted the job as security supervisor, he "had a motive to generate conflict around Logan, hoping [she] would fail in her new position as security supervisor." Appellant's Br. at 36. However, Dickson's motive is irrelevant. Rather, it is the

7

motive of the decision-makers. Logan argues that a jury could disbelieve APP's evidence that Dr. Smith had thought about demoting Logan before she reported Dickson's complaint and decide that it was Dr. Casey who had been responsible for, or at least had a part in, the decision to demote Logan. Logan further argues because Dr. Casey was the subject of Dickson's complaint, a jury could infer that she had retaliatory motive in deciding to demote Logan. See Kneibert v. Thomson v. Newspapers, 129 F.3d 444, (8th Cir. 1997) (evidence from person involved in the decision-making process may reflect employer's retaliatory motive). However, as the district court noted, this case is unusual in that Logan was not the victim of Dr. Casey's unwelcome touching. Rather, it was Dickson, who testified that although he did not welcome Dr. Casey's touching, which he described as patting or scratching of his back, he did not consider it sexual harassment. In addition, the fact that Dickson was eventually promoted to security supervisor undermines Logan's claim that her demotion was in retaliation to her report to Dr. Smith of Dr. Casey's alleged sexual harassment of Dickson. In light of the evidence of record, the proximity of Logan's demotion in relation to her report of alleged sexual harassment is insufficient evidence to prove that APP's reason for her demotion was a pretext for retaliation.

As to her retaliatory discharge claim, Logan argues that she offered evidence beyond the temporal proximity of her report to Dr. Smith and her discharge. She claims that she was subjected to unprecedented scrutiny and was treated differently than similarly situated employees, asserting that APP did not call doctors' offices to check whether other employees had kept medical appointments and that other employees had not been terminated for violating the PTO policy. In support, she cites an affidavit by Carol Woods, a former employee of APP. In her affidavit, Woods only stated that after Logan's demotion, she "noticed that [Dr.] Casey would single Barbara Logan for criticism on minor matters that most employees would not be criticized over." However, "[c]onclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment." Rose-Matson v. NMR Hosp., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998) (Rose-Matson).

Logan also argues that she could prove pretext because "APP cannot name one other employee who has been fired for being dishonest with someone other than APP's management." Appellant's Br. at 44. Logan has "misplace[d] the burden of proof." Rose-Matson, 133 F.3d at 1109 n.4. It is well-established that it is a plaintiff's burden "to produce specific, tangible evidence showing a disparity in the treatment of similarly situated employees." Id. Moreover, the "compared employees [must be] similarly situated in all relevant respects." Smith, 302 F.3d at 835. A relevant fact in this case is that Logan's PTO requests were for dental appointments that were related to a worker's compensation claim. Another relevant fact is that Logan was a security guard, and as Dr. Casey explained, it was important for security guards to give as much notice as possible for PTO requests, because security guards had to staff all shifts at the mental health and drug abuse treatment facility.

As Logan notes, "[s]ubstantial changes over time in the employer's proffered reason for its employment decision [may] support a finding of pretext." Kobrin v. University of Minnesota, 34 F.3d 698, 703 (8th Cir. 1994). However, contrary to her argument, in their depositions Drs. Smith and Casey did not give different reasons for Logan's termination. Rather, they merely explained why Logan's dishonesty about her dental appointments was significant. See Smith, 302 F.3d at 835 (employer's "testimony is not different from the reason originally given, but only a slight elaboration of that reason").

Logan also argues that she could prove pretext because APP failed to follow its progressive disciplinary policy. We note that Logan had received a warning about two unauthorized absences in October 2002. In any event, APP's policy provides that "[w]hen performance is at issue . . . the progressive disciplinary process . . . will be followed," but when, as here, "misconduct is at issue, the employee is subject to immediate termination." Indeed, the employee manual states that an employee is subject to immediate discharge for "dishonesty," which includes "lying about sick or personal leave."

9

Logan does not seriously argue that there was no basis in fact for the discharge. See Smith, 302 F.3d at 834. Although she asserts that she did not tell the dentist's office that she had to cancel the November 20 appointment because she had to work overtime, she does not dispute that she cancelled the appointment and did not report to work. She also does not dispute that she had scheduled the December 9 appointment before December 5, asserting that she must have forgotten that she had done so. However, Logan's "denials and justifications [are] not evidence that [APP] fabricated the charges." Grey v. City of Oak Grove, 396 F.3d 1031,1035 (8th Cir. 2005). "The question is whether [APP's] articulated reason[] for discharge w[as] a pretext for retaliation, not whether [Logan] actually did what [s]he was accused of doing or whether discharge was warranted." Id. In other words, the "relevant inquiry is whether [APP] believed [Logan was] guilty of [the] conduct justifying discharge." Scroggins v. University of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000). In this case, Logan presented no evidence to show that APP did not believe that she had been dishonest in cancelling the November 20 appointment and in stating that she had not scheduled the December 9 appointment in advance.

Indeed, on appeal Logan concedes that her statement to Dr. Casey that she had not scheduled the December 9 appointment in advance was "technically untruthful." Appellant's Br. at 39. She, however, asserts her statement was not a lie and invites this court to decide whether "technical untruthfulness" is "dishonesty" within the meaning of APP's policy permitting immediate termination for "dishonesty." Id. We decline her invitation. It is not our job to interpret APP's employment policy. We do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination or unlawful retaliation." Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005) (internal quotation omitted).

We have considered Logan's other arguments concerning pretext, and they are without merit. Accordingly, we affirm the district court's judgment.

_____

10