# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-3637

_____

| | | |
|---|---|---|
| Patricia Grabovac, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| Allstate Insurance Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 24, 2005
Filed: October 14, 2005

_____

Before ARNOLD, McMILLIAN, and COLLOTON, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Patricia Grabovac appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri granting summary judgment in favor of her former employer, Allstate Insurance Company (Allstate), on her claims of sex discrimination

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

and retaliation in violation of Title VII, 42 U.S.C. §§ 2000(e)-2, 2000e-3, and the Equal Pay Act (EPA), 29 U.S.C. §§ 206(d)(1), 215(a)(3). We affirm.

## BACKGROUND

Grabovac worked for Allstate in its west central region from 1997 until she was terminated in November 2001. At the time of her termination, Grabovac was a marketing business consultant (MBC). In 1999, Allstate had developed Allstate Financial Services (AFS), which allowed Allstate agents to sell variable life and annuity products. AFS is a registered broker-dealer and member of the National Association of Securities Dealers (NASD). Pursuant to NASD rules, an individual who sells variable products and any individual who manages or supervisors a person selling such products has to be registered with NASD. See NASD Manual, Rule 1031, 1032(b). Before an individual can be registered, he or she has to pass certain NASD-required examinations. As an MBC, Grabovac managed sales representatives who sold registered securities, and thus, as relevant here, had to pass NASD Series 6 and Series 63 examinations.

Allstate set a deadline of October 31, 2001, for MBCs to pass the required NASD examinations. As of January 2001, 22 MBCs in the west central region had passed the required examinations. Nine MBCs, including Grabovac, had not passed the examinations. By letter dated January 30, 2001, Bruce Williams, regional human resources manager, informed Grabovac: "Please be advised that you must secure [Series 6 and 63 licenses] . . . no later than October 31, 2001. [MBCs] who have not met these requirements by October 31, 2001, may be offered another position for which they are qualified, if available. Otherwise, their employment will be terminated." At some point, Grabovac had complained to Williams that she felt she was being discriminated against because she had to take the examinations and also had complained that her manager was threatening to fire her if she did not meet her "Life Plan," one of her production goals.

On April 13, 2001, Stacey Roskens, a human resources manager at Allstate's home office in Northbrook, Illinois, e-mailed Grabovac, warning Grabovac that she had to "secure [the Series 6 and 63 licenses] by October 31, 2001." In the e-mail, Roskens noted that Grabovac had failed the Series 6 examination twice and if she re-took the examination "after April [2001] and failed for a third time, [she] would not be allowed by NASD to [take] the exam until after the October 31, 2001, deadline for sales management to have secured the 6 & 63 licenses . . . [and] would not meet the minimum qualifications for continued employment as a Market Business Consultant."

On September 27 and October 1, 2001, Williams again wrote to Grabovac, reminding her that she had to secure her Series 6 and 63 licenses by October 1, 2001, and that failure to do so would result in termination of employment as an MBC. Grabovac passed the Series 63 examination before the October 31 deadline, but took the Series 6 examination on October 30, 2001, and failed. Of the 31 MBCs in the west central region, Grabovac was the only MBC who failed to obtain her Series 6 license by the October 31, 2001, deadline. In November 2001, Roskens and Dale Schueller, Grabovac's supervisor, met with Grabovac and informed her that she was terminated because she had not passed her Series 6 examination before the October 31, 2001, deadline. Grabovac did not inquire about alternative employment with Allstate. Leonard Fagan, a male who had been with Allstate since 1986, replaced Grabovac as an MBC.

In June 2003, Grabovac filed a complaint in federal court, alleging sex discrimination and retaliation under Title VII and the EPA. Allstate filed a motion for summary judgment. As to the Title VII discrimination claim, Allstate argued that Grabovac could not establish a prima facie case because she was not qualified to be an MBC due to her failure to pass the Series 6 examination by the October 31, 2001, deadline, and in any event, as to the discrimination and retaliation claims, Grabovac could not prove that the reason for her discharge–failure to pass the Series 6 examination by the deadline–was a pretext for discrimination or retaliation. As to the

3

EPA claims, Allstate argued that a review of the 2001 monthly salary and year-end bonuses for MBCs in the west central region showed that Grabovac had been paid comparably with male employees, and that there was no evidence that she had ever complained about unequal pay. Allstate filed numerous documents in support of its motion.

Grabovac opposed the motion, asserting that she had been given various deadlines for passing the Series 6 examination, that she was Allstate's "number one" producer, and that Fagan, who had replaced her as an MBC, had had "sex with [her] in 2000 and did not ask permission first." She also claimed that two males, Robert Vance and Timothy Waltrip, had different deadlines for passing the Series 6 and 63 examinations. Grabovac also submitted the affidavit and report of "expert witness" Howard Danzig, her then-employer who was a NASD licensed stockbroker with 14 years experience in the insurance business. Among other things in his report, Danzig stated that it was unusual for a company to discharge a "# 1 producer" and that Allstate had not given Grabovac a reasonable opportunity to retake the Series 6 examination. In his affidavit, Danzig opined that by discharging Grabovac and replacing her with Fagan, Allstate had violated a NASD regulation that required a registered company to "observe high standards of commercial honor and just and equitable principles and trade." Allstate moved to strike Grabovac's designation of Danzig as an expert witness and exclude his report and affidavit under Fed. R. Evid. 702.

The district court granted Allstate's motion for summary judgment and motion to strike the designation of Danzig as an expert witness and exclude his affidavit and report. As to the Title VII claims, the district court held that Grabovac could not establish a prima facie case of sex discrimination because she was not qualified to be an MBC, and that in any event, had not proved that Allstate's reason for her discharge–failure to pass the Series 6 examination by the October 31, 2001 deadline–was a pretext for discrimination or retaliation. As to the EPA claims, the

district court held that the unrebutted salary data provided by Allstate showed that of the five MBCs in the region, four of whom were male, Grabovac had the second highest salary and bonus.

**DISCUSSION**

We review the district court's grant of summary judgment de novo and "affirm if, viewing the record in the light most favorable to [the non-moving party], there are no genuine issues of material fact and [the moving party] is entitled to judgment as a matter of law." Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002). "In order to establish a genuine issue of material fact, [Grabovac], as the non-moving party, could not simply rest upon the pleadings." Jeseritz v. Potter, 282 F.3d 542, 545 (8th Cir. 2002) (internal quotation omitted). "Nor could [s]he rely on conclusory statements in [her] affidavit." Id. "Rather, [s]he had to "point to evidence in the record to raise a genuine issue for trial." Id. (internal quotation omitted).

The district court did not err in granting Allstate summary judgment as to Grabovac's Title VII discharge claim. It is undisputed that Grabovac did not pass the Series 6 examination by the October 31, 2001, deadline. Thus, as the district court held, she could not establish a prima facie case, because she was not "qualified for the [MBC] position." Rodgers v. U.S. Bank, 417 F.3d 845, 850 (8th Cir. 2005) (Rodgers). Although Grabovac argues that she was qualified because she was the "number one producer," even if true, it is irrelevant.[2] Grabovac was discharged because she did not pass the Series 6 examination by the deadline, not because of her sales performance. Also irrelevant is her belief that the October 31 deadline was subject to change, that the deadline was arbitrary, and that Allstate should have extended the deadline because of personal problems. Allstate was entitled to chose the deadline and enforce

---

[2]As Allstate notes, Grabovac offers no facts in support of her assertion that she was the "number one producer."

it. It is well-established "that the employment- discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir.1995).

Even if Grabovac could establish a prima facie case of discrimination, she failed to offer evidence that Allstate's reason for her discharge–failure to pass the Series 6 examination by the October 31 deadline–was a pretext for sex discrimination. Although Grabovac argues that two males, Robert Vance and Timothy Waltrip, did not meet the October 31 deadline and were not terminated, the two males were not "similarly situated in all relevant respects." Rodgers, 417 F.3d at 853. Vance was an agency consultant manager (ACM), not an MBC, and the fact Allstate had a different deadline for ACMs to pass the Series 6 examination does not suggest that Allstate discriminated on the basis of sex in imposing the October 31 deadline for MBCs. Waltrip was an MBC, but passed his Series 6 and 63 examinations by the October 31 deadline before he voluntarily left his position as an MBC. When Waltrip returned to Allstate, he passed additional NASD examinations by Allstate-mandated deadlines. Nor, as Grabovac argues, does the fact that Fagan, with whom she had had a sexual relationship in 2000, replaced her as an MBC raise an inference that Allstate's stated reason for her discharge was a pretext for sex discrimination.

The district court also did not err in granting summary judgment on Grabovac's Title VII retaliation claim. Although we doubt that Grabovac could establish a prima facie retaliation case, see Wallace v. Sparks Health Sys., 415 F.3d 853, 858 (8th Cir, 2005) (elements of prima facie Title VII retaliation case), even if she could, she offered no evidence to show that Allstate's proffered reason for her discharge was a pretext for retaliation.

Nor did the district court err in granting Allstate's motion summary judgment as to Grabovac's EPA claims. "To establish a prima facie case under the [EPA], [Grabovac had] to show that [Allstate] discriminated on the basis of sex by paying wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Horn v. University of Minnesota, 362 F.3d 1042, 1045 (8th Cir. 2004) (quoting 29 U.S.C. 206(d)(1)). The evidence of record was provided by Allstate and it shows that out of the five MBCs in the west central region, four of whom were male, Grabovac had the second highest salary and bonus for 2001. Grabovac also failed to offer any evidence that Allstate retaliated against her in violation of the EPA.

Contrary to Grabovac's argument, the district court did not abuse its discretion in striking Grabovac's designation of Howard Danzig as an expert witness and excluding his affidavit and report from consideration. As the district court held, "Danzig's affidavit and report offer improper opinions concerning [Allstate's] compliance with NASD regulations, offer numerous hearsay assertions of fact wholly improper from an expert witness, and offer numerous irrelevant and improper conclusions concerning [Allstate's] business judgment."

We have considered Grabovac's other arguments, and they are without merit. Accordingly, we affirm the judgment of the district court.

_____