**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-2062
_____

OLAF VENTER,

Appellant

v.

JOHN E. POTTER, POSTMASTER GENERAL OF THE UNITED STATES;
UNITED STATES POSTAL SERVICE


On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 08-cv-00795)
District Judge:  Joy Flowers Conti

Submitted May 11, 2011

Before:  SMITH, CHAGARES, and VANASKIE, Circuit Judges.

(Filed May 27, 2011)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Plaintiff Olaf Venter appeals the District Court's grant of summary judgment to

the Postmaster General and the United States Postal Service ("USPS") on his claims for

age and disability discrimination and retaliation for filing four complaints with the United

States Equal Employment Opportunity Commission. Because no genuine issues of material fact persist and defendants are entitled to judgment as a matter of law, we will affirm the judgment of the District Court.

I.

We write solely for the benefit of the parties and will, therefore, only briefly recite the facts essential to our disposition. Venter was hired as a full-time employee of USPS in 1997 at the age of fifty-four. Between 2000 and 2007, Venter suffered from tendonitis, carpal tunnel syndrome, a shoulder and bicep tear, a bulging disc injury, and a depressive disorder. Because of his injuries, Venter was placed on limited duty. At certain times throughout his employment, he disagreed with the precise manner in which the USPS chose to accommodate his impairments.

In February 2004, Venter filed the first of four administrative complaints with the EEOC, contending that his supervisors had discriminated against him because of his age and disability in choosing his work assignments. An administrative law judge ("ALJ") found that no discrimination had occurred. Venter initiated a second such complaint in August 2004, alleging that Leonard Baranowski, manager of vehicle services, had denied two of his requests for advanced sick leave in retaliation for the filing of his earlier complaint with the EEOC. An ALJ found that no retaliation had occurred. Venter filed a third administrative complaint in April 2005, claiming that Baranowski had introduced errors into his pay and leave records in retaliation for his previous filings. An ALJ again found that no retaliation had occurred.

On January 18, 2007, Baranowski offered Venter a new limited duty assignment requiring him to work from 3:00 p.m. through 11:00 p.m. as a clerk in the transportation office two days per week, and to work from 6:00 p.m. through 2:30 a.m. in the mail processing unit three days per week. Venter signed a form, indicating that he was accepting the assignment "under protest." Unhappy with this new assignment because it required him to begin his shift at different times on different days, Venter asked Greg Hoburg, his union steward, to initiate the grievance procedure. Although Hoburg indicated that the filing of a grievance was unwarranted by the situation, Venter doggedly persisted in his efforts to have one filed. In February 2007, Venter filed his fourth complaint with the EEOC, alleging discrimination based on age, disability and national origin, as well as retaliation for his earlier administrative filings.

On March 7, 2007, Venter again approached Hoburg about filing a grievance on his behalf. Hoburg reiterated his position that a grievance was unwarranted and that he did not wish to discuss the matter further. Venter, however, continued to insist that a grievance be filed. Hoburg sought the intervention of Transportation Operations Supervisor Thomas P. Dziubinski ("Dziubinski"), who took Venter to a smoking area and told him that his behavior was inappropriate.

After engaging in these verbal confrontations with Hoburg and Dziubinski, Venter found himself distraught and went to the Occupational Health Office, where he was treated by nurses Kimberly Sample and Beverly Streitman. Venter stated that he wanted to "punch" or "kill" Hoburg. Nurse Sample, who had never dealt with Venter before, contacted Motor Vehicle Service Supervisor Ed Hosack to report Venter's threatening

3

statements about Hoburg. She also contacted Distribution Operations Manager Ken Pawlowski about the matter. Because of Venter's mental state, Nurse Sample believed it appropriate for him to leave work for the day, even though his shift was not yet over. At Nurse Sample's direction, Venter went to Hosack's office to request permission to leave early. While with Hosack, he again expressed a desire to "kill" Hoburg. Viewing this statement as a potentially dangerous threat, Hosack told Venter to go home.

USPS maintains a Zero Tolerance Policy regarding violence, which prohibits employees from making "any actual, implied or veiled threat, made seriously or in jest." Supplemental Appendix ("App.") 3. Threats made by employees are evaluated on a "Priority Risk Scale." App. 220. Threats deemed to convey an "Extreme Risk" of violence are categorized as priority one threats, while statements involving "No Risk" of violence are categorized as priority four "threats." Priority two threats are those indicating the presence of a "High Risk" of violence, and priority three threats are those indicating the presence of a "Low or Moderate Risk" of violence.

On March 9, 2007, USPS' Threat Assessment Team convened a meeting regarding Venter's threatening statements. The Assessment Team determined that Venter's statements constituted priority two threats. As part of the investigation, Postal police officers interviewed Venter at his home. Venter indicated that he had no intention of harming Hoburg, but admitted that he made the threats.

In a letter dated March 9, 2007, Baranowski informed Venter that he had been placed on "off-duty (without pay) status effective March 7, 2007 at approximately 9:58

4

pm." The stated reason for this action was a concern that Venter's return to the workplace could have been "injurious" to Venter or to others.

On March 14, 2007, the Postal Inspection Service issued an investigative memorandum concerning Venter's statements about Hoburg. After reviewing the investigative memorandum, MVS management officials initiated disciplinary proceedings. On March 28, 2007, they conducted a pre-disciplinary interview with Venter, during which Venter admitted that he had expressed a desire to "kill" Hoburg. He indicated, however, that he never intended to actually harm Hoburg, and that he had made that clear to Hosack. Nonetheless, on April 3, 2007, Dziubinski completed a form recommending that Venter's employment with the USPS be terminated based on his violation of the Zero Tolerance Policy. Baranowski concurred in this recommendation. Accordingly, Dziubinski issued a "Notice of Proposed Removal" to Venter on April 6, 2007. Transportation Manager William Kustarz met with Venter and his counsel on April 23, 2007, in order to discuss the matter. And in a final "Letter of Decision-Removal" dated May 8, 2007, Kustarz informed Venter that his employment with the USPS would be terminated as of the close of business on May 16, 2007.

Venter appealed his discharge to the Merit Systems Protection Board ("MSPB"). After a hearing, an ALJ issued a decision affirming the USPS' decision to terminate Venter's employment. In that decision, the ALJ rejected Venter's affirmative defenses of age discrimination, disability discrimination, and retaliation. Venter filed a petition for review of the ALJ's decision, which was similarly denied.

5

On June 9, 2008, Venter commenced this action in the District Court, claiming that his termination was the result of age and disability discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. §§ 701, et seq.,[1] as well as retaliation for engaging in statutorily-protected activities. On March 9, 2010, the District Court issued a lengthy opinion, thoroughly addressing each of Venter's claims, and ultimately granting summary judgment to defendants. Venter timely filed this appeal.

II.

The District Court properly exercised jurisdiction over this action pursuant to 29 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

"We subject the District Court's grant of summary judgment to plenary review, and we apply the same standard that the lower court should have applied." Smathers v. Multi-Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000)). Under that standard, summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "While the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

---

[1] Venter also claims that his termination violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., but "[i]n clear statutory language, Congress established that USPS is part of the federal government and that the entire federal government is excluded from the coverage of the ADA." Henrickson v. Potter, 327 F.3d 444, 447 (5th Cir. 2003) (citations omitted). Accordingly, Venter may not maintain a claim against USPS pursuant to the ADA.

favor in determining whether a genuine factual question exists, summary judgment should not be denied unless there is sufficient evidence for a jury to reasonably find for the nonmovant." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011) (citations, quotation marks, and brackets omitted).

III.

In his complaint, Venter alleges that his termination was the result of illegal (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), (2) disability discrimination in violation of the Rehabilitation Act, and (3) retaliation for engaging in statutorily-protected activities — namely, filing complaints with the EEOC.

Where, as here, the plaintiff is without direct evidence of either discrimination or retaliation, we analyze such claims using the familiar burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009) (applying McDonnell Douglas framework to an ADEA claim); Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (applying McDonnell Douglas to Rehabilitation Act claim); Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006) (applying McDonnell Douglas framework to a retaliation claim). Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination or retaliation. 411 U.S. at 802; see also Moore, 461 F.3d at 342. If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory and nonretaliatory reason for its decision to terminate the plaintiff. McDonnell Douglas, 411 U.S. at 802; see also Moore, 461 F.3d at 342.

7

Once the employer meets its "relatively light burden," the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Accordingly, once an employer has proffered a legitimate, nondiscriminatory and nonretaliatory reason, the plaintiff "must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. at 762. Because the ultimate issue is whether "discriminatory animus" or retaliation motivated the employer in terminating the plaintiff, it is not enough to show that the employer made a "wrong or mistaken" decision. Id. at 765 (citations omitted). Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. Id.

Even assuming that Venter has successfully made out a prima facie case on each of his three claims — a proposition of which we are doubtful — he has presented no evidence to discredit defendants' legitimate, non-discriminatory and non-retaliatory reason for his termination. Defendants' documented reason for terminating Venter's employment was that Venter violated USPS' Zero Tolerance Policy by stating that he wanted to "punch" and "kill" Hoburg. This is plainly a legitimate reason for terminating

8

Venter's employment. And, notably, Venter admits both that he made these threatening statements and that he understood the import of the Zero Tolerance Policy.

In short, there is nothing in the record that would either cast doubt on the veracity of defendants' proffered reason for Venter's discharge or suggest that the proffered reason was not in fact the motivating cause of his termination.[2] We must therefore conclude, as did the District Court, that Venter has failed as a matter of law to satisfy his burden to establish that defendants' articulated, legitimate reason for his termination was pretextual. Accordingly, each of his claims fails.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[2] On appeal, Venter primarily seems to argue that two younger employees who violated the Zero Tolerance Policy were treated more favorably. This argument is unavailing for two reasons. First, Venter explicitly abandoned any argument based on comparators in the District Court. See App. 413-14, 446 n.17. Second, and even more importantly, neither of the younger employees can properly be considered a comparator. The situation of the first is incomparable because his incident occurred under the supervision of different decision-makers at a different USPS facility, see Sherman v. Runyon, 235 F.3d 405, 409 (8th Cir. 2000) (finding that an employee failed to show pretext by pointing to the favorable treatment of another employee who was disciplined by a different supervisor at a different facility). And the situation of the second suggested comparator fails to provide support for Venter's claim of pretext because he, like Venter, was removed from his position at USPS in accordance with the Zero Tolerance Policy, and was only later reinstated because he had been falsely accused. See App. 345.